|   |   |
|---|---|
| 1 | SEYFARTH SHAW LLP |
| 2 | Joshua A. Rodine (SBN 237774)<br>jrodine@seyfarth.com |
| 3 | Miguel Ramirez (SBN 3332966)<br>mramirez@seyfarth.com |
| 4 | Mackenzie Mullin (SBN 357678)<br>mmullin@seyfarth.com |
| 5 | 2029 Century Park East, Suite 3500<br>Los Angeles, California 90067-3021 |
| 6 | Telephone: (310) 277-7200<br>Facsimile: (310) 201-5219 |
| 7 | Attorneys for Defendant |
| 8 | EXTIME PS LLC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEZANDRA BELTRAN, an individual,<br><br>            Plaintiff,<br><br>   v.<br><br>EXTIME PS LLC, (formerly known as The Private Suite Holdings, LLC), a Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>            Defendants. | Case No.<br><br>[Los Angeles Superior Court Case No. 25STCV33199]<br><br>**DEFENDANT EXTIME PS LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT [28 U.S.C. §§ 1332, 1441, 1446]**<br><br>Complaint Filed:   November 13, 2025 |

DEFENDANT EXTIME PS LLC'S NOTICE OF REMOVAL

322762780v.1

1  To the United States District Court for the Central District of California and to Plaintiff Alezandra Beltran and her attorneys of record:

Please take notice that Defendant Extime PS LLC ("PS" or "Defendant") hereby files this Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441(a)-(b), and 1446, based on diversity of citizenship jurisdiction, in order to effectuate the removal of the above-captioned action from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California. PS states that removal is proper for the following reasons:

## I. BACKGROUND

1. On November 13, 2025, Plaintiff Alezandra Beltran ("Plaintiff") filed a Complaint for Damages against PS in the Superior Court of California, County of Los Angeles, entitled *Alezandra Beltran, an individual v. Extime PS LLC, (formerly known as The Private Suite Holdings, LLC), a Limited Liability Company; and DOES 1 through 50, inclusive*, designated as Case No. 25STCV33199. (Declaration of Miguel Ramirez ["Ramirez Dec."] ¶ 2, Ex. 1.)

2. Plaintiff asserts causes of action for: (1) "Retaliation in Violation of Cal. Labor Code § 98.6"; (2) "Constructive Wrongful Termination in Violation of Public Policy"; (3) "Disability Discrimination in Violation of FEHA (Gov. Code § 12940(a))"; (4) "Failure to Engage in Interactive Process in Violation of FEHA"; (5) "Failure to Provide Reasonable Accommodation in Violation of FEHA"; (6) "Failure to Prevent Harassment, Discrimination and Retaliation (Gov. Code, § 12940(k))"; (7) "Failure to Provide Meal Breaks in Violation of Labor Code §§ 226.7, 512"; (8) "Failure to Provide Rest Breaks in Violation of Labor Code §§ 226.7, 512"; (9) "Failure to Maintain Personnel Records (Labor Code § 1198.5)"; (10) "Unfair Competition Law — 'Unlawful' Prong (Bus. & Prof. Code § 17200 *et seq.*)"; (11) "Failure to Provide Accurate Wage Statements in Violation of Labor Code § 226"; (12) "Waiting Time Penalties (Labor Code § 203)"; (13) "Intentional Infliction of Emotional Distress"; and

1  (14) "Negligent Infliction of Emotional Distress." (Ramirez Dec. ¶ 2, Ex. 1, Complaint ["Compl."].)

3. On December 5, 2025, PS's registered agent for service of process in California received, via process server, the Summons and Complaint. (Ramirez Dec. ¶ 3.)

4. On December 31, 2025, PS timely filed its Answer to Plaintiff's Complaint in Los Angeles County Superior Court. (Ramirez Dec. ¶ 4, Ex. 2.)

5. The documents described in Exhibits 1 through 2 constitute all of the process, pleadings, and orders served on or filed by PS in the state court action prior to PS's filing this Notice of Removal. 28 U.S.C. § 1446(a). (Ramirez Dec. ¶ 5.)

## II. TIMELINESS OF REMOVAL

6. This notice of removal is timely as it is filed less than one year from the date this action was commenced, and within thirty days that service of the Summons and Complaint was effectuated upon the moving defendant. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (holding the thirty-day deadline to remove commences upon service of the summons and complaint).

7. The service of process which triggers the 30-day period to remove is governed by state law. *City of Clarksdale v. BellSouth Telecomms., Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law."); *see also, Williams v. Leonard*, No. C02-05084 CRB, 2003 WL 163183 at *1 (N.D. Cal. Jan. 13, 2003) (where 30-day removal deadline falls on weekend, deadline moves to the next business day); *Pogosyan v. U.S. Bank Tr. Nat'l Ass'n*, No. CV15-07085-AB (RAOx), 2015 WL 12696188, at *2 (C.D. Cal. Oct. 22, 2015) (same); *Washington v. Reliance Standard Life Ins. Co.*, LA CV20-01771 JAK(MRWx), 2020 WL 13561595 (C.D. Cal. April 16, 2020) (same).

8. Here, PS's Notice of Removal is timely because it was filed on January 5, 2026, which is within 30 days of service of the Complaint on December 5, 2025.

### III. JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP

9. The Court has original jurisdiction of this action under 28 U.S.C. § 1332(a)(1). As set forth below, this action is removable pursuant to 28 U.S.C. § 1441(a) as the amount in controversy is in excess of $75,000, exclusive of interest and costs, and is between citizens of different states.

#### A. Plaintiff Is a Citizen of California.

10. "An individual is a citizen of the state in which he is domiciled …." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) (citing *Hill v. Rolleri*, 615 F.2d 886, 889 (9th Cir. 1980)). A person's domicile is the place they reside with the intent to remain indefinitely. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (holding that "the place of residence is *prima facie* [evidence of] domicile"). Furthermore, evidence of continuing residence creates a presumption of domicile. *Washington v. Havensa LLC*, 652 F.3d 340, 345 (3d Cir. 2011).

11. Here, Plaintiff alleges in her Complaint that she is a resident of California. (Compl. ¶ 1.) Plaintiff also alleges she was employed by PS within the State of California from July 20, 2022, until November 1, 2024, and that she performed work for PS in Los Angeles, California. (Compl. ¶¶ 13, 15.) Plaintiff's home address during the entire time period when she worked for PS was always within the State of California. (Declaration of Natalie Kimm ["Kimm Dec."] ¶ 8.) There are no documents in Plaintiff's personnel file suggesting that she is currently, or during the periods of her employment was, a resident or citizen of any state other than California. (Kimm Dec. ¶ 10.)

#### B. PS Is Not a Citizen of California.

12. In a removal, a limited liability company is treated as a partnership for purposes of diversity, and citizenship depends on the citizenship of its members. *Johnson*

1  *v. Columbia Props. Anchorage*, LP, 437 F.3d 894, 899 (9th Cir. 2006). A corporation is deemed to be a citizen of any state in which it has been incorporated and of any state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities …. [I]n practice it should normally be the place where the corporation maintains its headquarters-provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings[.]" *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Moreover, post-*Hertz* cases have determined a company's principal place of business "by looking to the location in which its officers or directors meet to make high-level management decisions." *Johnson v. SmithKline Beecham Corp.*, 724 F. 3d 337, 354 n.19 (3d Cir. 2013); *see also 3123 SMB LLC v. Horn*, 880 F.3d 461, 468 (9th Cir. 2018) (holding that "a recently-formed holding company's principal place of business is the place where it has its board meetings, regardless of whether such meetings have already occurred, unless evidence shows that the corporation is directed from elsewhere").

13. Defendant Extime PS LLC's sole member is Extime PS Inc. (Kimm Dec. ¶ 6.)

14. Extime PS Inc. is, and was at the time the civil action was instituted, a corporation organized under the laws of Delaware. (Kimm Dec. ¶ 7.)

15. Additionally, Extime PS Inc.'s corporate headquarters are located in New York, New York, where its board of directors hold its board meetings. (Kimm Dec. ¶ 7.) Its board of directors direct, control, and coordinate its activities from New York, New York. (*Id.*) All of Extime PS Inc.'s board of directors maintain offices in New York and France. (*Id.*) Thus, Extime PS Inc. is a citizen of Delaware and New York.

16. Accordingly, because Extime PS Inc. is a citizen of Delaware and New York, PS is a citizen of the States of Delaware and New York, not California. Therefore, the requisite diversity of citizenship exists. 28 U.S.C. § 1332(c)(1).

      **C.**      **Doe Defendants' Citizenship May Be Disregarded.**

17. The presence of Doe defendants in this case has no bearing on diversity of citizenship for removal. 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").

18. Pursuant to 28 U.S.C. § 1441(b)(1), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (holding unnamed defendants are not required to join in a removal petition); *see also Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) ("[C]itizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant."). Thus, the existence of Doe defendants 1 through 50, inclusive, does not deprive this Court of jurisdiction.

## IV. THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

19. While PS denies any liability as to Plaintiff's claims, the amount in controversy requirement for diversity jurisdiction is satisfied because Plaintiff specifically alleges that the amount exceeds the jurisdictional minimum of $75,000. 28 U.S.C. § 1332(a)(1); *see Singer v. State Farm Mutual Automobile Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (holding that the jurisdictional amount may be determined from the face of the complaint).

20. Here, Plaintiff specifically seeks "remedies" and "relief" of "up to $5,000,000." (Compl. ¶¶ 48, 59, 68, 74, 81, 89, 95, 103, 109, 114, 120, 126, 132, 140.) Plaintiff further seeks "general and compensatory damages … up to $10,000,000." (Compl., Prayer, ¶ A.) This alone satisfies the amount in controversy requirement.

21. Assuming *arguendo* that Plaintiff does not allege a specific amount of damages, the amount in controversy requirement for diversity jurisdiction is satisfied because "it is more likely than not" that the amount exceeds the jurisdictional minimum of $75,000. 28 U.S.C. § 1332(a)(1); *see Sanchez v. Monumental Life Ins. Co.*, 102 F.3d

5
DEFENDANT EXTIME PS LLC'S NOTICE OF REMOVAL
322762780v.1

1   398, 404 (9th Cir. 1996) (where a plaintiff's state court complaint does not specify a
2   particular amount of damages, the defendant must provide evidence establishing that it is
3   "more likely than not" that the amount in controversy exceeds the requisite threshold).
4        22.    Where a complaint does not allege a specific amount in damages, the
5   removing defendant bears the burden of proving by a *preponderance of the evidence* that
6   the amount in controversy exceeds the statutory minimum. *Abrego v. The Dow Chem.*
7   *Co.*, 443 F.3d 676, 683 (9th Cir. 2006). Furthermore, "the amount-in-controversy inquiry
8   in the removal context is not confined to the face of the complaint." *Valdez v. Allstate*
9   *Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that a court may consider facts
10  presented in the removal petition). When the amount in controversy is not apparent from
11  the face of the complaint, a defendant may set forth underlying facts supporting its
12  assertion that the amount in controversy exceeds the jurisdictional threshold. *Id.*
13       23.    As the Supreme Court explained, "a defendant's notice of removal need only
14  include a plausible allegation that the amount in controversy exceeds the jurisdictional
15  threshold." *Dart Cherokee Basin Operating Co., LLC v. Owen*, 574 U.S. 81, 87 (2014)
16  ("[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-
17  controversy allegation should be accepted when not contested by the plaintiff or
18  questioned by the court."); *see also Valdez*, 372 F.3d at 1117 ("[T]he parties need not
19  predict the trier of fact's eventual award with one hundred percent accuracy.").
20  Defendants are not obligated to "research, state, and prove the plaintiff's claims for
21  damages." *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009);
22  *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (finding the
23  inquiring is "what is in controversy" by the complaint, not what a defendant will actually
24  owe).
25       24.    In determining the amount in controversy, the aggregate of general damages,
26  special damages, punitive damages, and attorney's fees are properly considered for
27  purposes of removal on grounds of diversity jurisdiction. *Galt G/S v. JSS Scandinavia*,
28  142 F.3d 1150, 1156 (9th Cir. 1998) (holding claims for statutory attorney's fees may be

included in amount in controversy, regardless of whether such an award is discretionary or mandatory); *Davenport v. Mutual Benefit Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages may be taken into account in determining amount in controversy where recoverable under state law); *Conrad Assocs. v. Hartford Accident & Indemnity Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998) (determining the amount in controversy includes claims for general and special damages).

25. The calculations supporting the amount in controversy are based on Plaintiff's *potential recovery* pursuant to the claims asserted in the Complaint. These calculations assume, without admitting, the truth of Plaintiff's allegations, and assume, without admitting, complete liability based on Plaintiff's theory of recovery.

**A.      Plaintiff's Alleged Lost Wages and Front Pay.**

26. In her Complaint, Plaintiff seeks to recover economic damages. Specifically, Plaintiff seeks compensation for "lost wages and benefits," "back pay," "front pay," "loss of earning capacity," and "lost advancement opportunities." (Compl. ¶¶ 47, 59, 67, Prayer, ¶ B.) Plaintiff further alleges that she resigned from her employment with PS in constructive termination of her employment. (Compl. ¶¶ 36, 58, 65, 86, 122, 131, 139.)

27. Assuming Plaintiff were to prevail at trial, she will claim lost wages and back pay from the date of resignation of employment/constructive termination through the completion of trial. PS employed Plaintiff as a full-time employee from November of 2022, through Plaintiff's resignation of her employment effective on November 1, 2024. (Kimm Dec. ¶ 9.) PS's records indicate that at the time of Plaintiff's termination, she last worked as an Operations Agent, earning $31.83 per hour and worked approximately 30-40 hours per week, exclusive of overtime she regularly earned. (*Id.*) Accordingly, at the time of her termination of employment, Plaintiff was conservatively earning approximately $4,137.90 per month.[1]

---

[1]      $31.83/hr x 30 hrs/week = $954.90 weekly. Multiply that by 52 weeks/year = $49,654.80 annually. Divided by 12 months = $4,137.90 monthly.

28. Conservatively estimating a November 13, 2026, trial date (twelve months after the Complaint was filed), Plaintiff's alleged lost earnings would total approximately $101,219.40.[2]

29. As explained above, Plaintiff also seeks front pay, where an award of three years of front pay would entitle Plaintiff an additional recovery of up to $148,964.40.[3] *See Traxler v. Multnomah County*, 596 F.3d 1007, 1015 (9th Cir. 2010) (upholding district court's decision to award nearly four years' front pay in a wrongful termination suit); *see also Glenn-Davis v. City of Oakland*, No. C 02-2257 SI, 2008 WL 410239, *4 (N.D. Cal. 2008) (finding three years of front pay "appropriate" in a discrimination suit); *Ackerman v. Western Elec. Co., Inc.*, 643 F. Supp. 836, 856 (N.D. Cal. 1986) (same). Thus, Plaintiff's alleged lost wages total approximately $250,183.80, which is in excess of the $75,000 threshold.[4]

### B. Plaintiff Specifically Alleges Her Emotional Distress Claims Could Exceed $75,000.

30. Plaintiff seeks damages for "emotional distress," "workplace anxiety," "severe mental health deterioration," "severe emotional distress," "reputational harm," "physical pain," "anxiety," "fear," "panic attacks," and "general damages." (Compl. ¶¶ 23, 37, 47-48, 59, 67-68, 73-74, 80-81, 86, 89, 95, 103, 109, 114, 120, 126, 129-132, 137-140, Prayer, ¶ A.) Furthermore, Plaintiff specifically alleges that, "Plaintiff is entitled to all remedies under law, including … emotional distress damages … and any applicable … relief of at least $10,000 and up to $5,000,000." (Compl. ¶¶ 48, 59, 68, 74, 81, 89, 95, 103, 109, 114, 120, 126, 132, 140.)

31. Nevertheless, in *Thompson v. Big Lots Stores, Inc.*, No. 1:16-cv-01464-LJO-JLT, 2017 WL 590261, *4 (E.D. Cal. 2017), the Eastern District of California made clear

---

[2]/ $954.90 weekly x 106 weeks = $101,219.40.

[3]/ $4,137.90 monthly x 36 months (3 years) = $148,964.40.

[4]/ $101,219.40 in past lost wages + $148,964.40 in front pay = $250,183.80 in lost wages.

8
DEFENDANT EXTIME PS LLC'S NOTICE OF REMOVAL

322762780.v.1

1  that "[i]n determining the amount in controversy, a court may assess likely emotional
2  distress damages by reference to damages awards in similar discrimination cases."
3  Applying that rule, the *Thompson* court found the defendant met its burden of showing
4  that damages awards for emotional distress in analogous cases are often substantial,
5  where the defendant pointed to a jury award of $122,000 in emotional distress damages
6  to an employee who sued for pregnancy discrimination and wrongful termination. *Id.*

7       32.   Here, a review of jury verdicts in California demonstrates that emotional
8  distress awards in discrimination and similar cases commonly exceed $75,000. *Aguilar v.*
9  *LA Metro BP Holding Co., LLC, et al.*, No. BC651278, 2018 WL 7286562 (Los Angeles
10 Sup. Ct., Nov. 20, 2018) (jury awarded $265,000 in general damages for claims of
11 discrimination, harassment, retaliation, failure to prevent harassment and discrimination,
12 and wrongful termination); *Meadowcroft, et al. v. Silverton Partners, Inc., et al.*, No.
13 BC633239, 2018 WL 7635472 (Los Angeles Sup. Ct., Sep. 11, 2018) (jury awarded two
14 plaintiffs $2.5 million each in compensatory damages for pain and suffering for claims of
15 harassment, retaliation, wrongful termination and failure to prevent harassment); *Silverman*
16 *v. Stuart F. Cooper Inc.*, No. BC467464, 2013 WL 5820140 (Los Angeles Sup. Ct., July
17 19, 2013) (jury awarded $157,001 for emotional distress damages in discrimination case);
18 *Ward v. Cadbury Schweppes Bottling Grp.*, 09CV03279(DMG), 2011 WL 7447633 (C.D.
19 Cal 2011) (jury award $5,600,000 in non-economic damages in discrimination and
20 retaliation case); *Aboulafia v. GACN Inc.*, No. BC469940, 2013 WL 8115991 (Los
21 Angeles Sup. Ct., Sept. 23, 2011) (pain and suffering award of $250,000, $250,000,
22 $250,000, and $250,267 to four employees in discrimination action); *Welch v. Ivy Hill*
23 *Corp.*, No. BC414667, 2011 WL 3293268 (Los Angeles Sup. Ct., Mar. 8, 2011) (award of
24 $1,270,000 in pain and suffering to employee in a discrimination action); *Leimandt v.*
25 *Mega RV Corp.*, No. 30-2010-00388086, 2011 WL 2912831 (Orange County Sup. Ct.,
26 Feb. 4, 2011) (jury awarded $385,000 in pain and suffering to employee in a discrimination
27 case); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002) ("emotional
28 distress damages in a successful employment discrimination case may be substantial")*;*

*Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). These awards demonstrate that, for diversity purposes, the value of Plaintiff's alleged emotional distress damages exceeds the $75,000 amount in controversy requirement.

## C. Potential Attorney's Fees Establish the Amount in Controversy Exceed $75,000.

33. Plaintiff also seeks attorney's fees. (Compl. ¶¶ 48, 59, 68, 74, 81, 89, 95, 103, 109, 114, 120, 126, 132, 140, Prayer for Relief.) Attorney's fees are properly considered in calculating the amount in controversy for purposes of removal based on diversity jurisdiction. *See Galt*, 142 F.3d at 1156 (claims for statutory attorney's fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory). Under California Government Code section 12965(b), the court in its discretion may award fees and costs to the "prevailing party" in FEHA actions. Although the statute provides that the court "may" award fees, cases hold that a prevailing plaintiff is entitled to fees "absent circumstances that would render the award unjust." *Horsford v. Bd. of Trs. of Cal. State Univ.*, 132 Cal. App. 4th 359, 394 (2005). Here, Plaintiff asserts four FEHA claim against PS in the Complaint. (Compl. Third, Fourth, Fifth, Sixth Causes of Action.)

34. Here, Plaintiff, if successful, would be entitled to an award of attorney's fees that itself "more likely than not" would exceed $75,000. Verdicts show that attorney's fees in employment discrimination cases typically exceed $75,000. *See Crawford v. DIRECTV, Inc.*, 2010 WL 5383296 (Los Angeles County Sup. Ct.) (approving attorney's fee award of $159,762.50 in alleged discrimination case); *McMillian v. City of Los Angeles*, 2005 WL 3729094 (Los Angeles County Sup. Ct.) ($504,926 in attorney's fees awarded in discrimination case); *Denenberg v. California Dep't of Trans.*, No. 2007 WL 2827715 (San Diego County Sup. Ct. Sept. 16, 2006) (attorney's fees award of $490,000 in case alleging discrimination, harassment, and retaliation); *Denenberg v. Cal. Dep't of Transp.*, 2006 WL 5305734 (San Diego County Sup. Ct.) (attorney's fees award of $490,000 for claims including discrimination); *Wooley v. Jack in the Box Restaurant*,

2002 WL 31118460 (C.D. Cal.) ($160,293 in attorney's fees awarded in discrimination case).

35. PS anticipates depositions being taken in this case, and that ultimately, PS will file a Motion for Summary Judgment. (Ramirez Dec. ¶ 6.) Based on defense counsel's experience, attorney's fees in employment discrimination cases often exceed $75,000. (*Id.*) In this regard, it is more likely than not that the fees will exceed $75,000 through discovery and a summary judgment hearing, and the fees would certainly exceed $75,000 if the case proceeds to trial. (*Id.*)

### D. Potential Punitive Damages Establish the Amount in Controversy Exceeds $75,000.

36. Plaintiff also seeks punitive damages. (Compl., Prayer.)

37. A request for punitive damages must be taken into account for purposes of determining the amount in controversy where such damages are recoverable under state law. *See Davenport v. Mut. Benefit Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (stating that punitive damages must be taken into account where recoverable under state law). "Because plaintiff brings a claim under FEHA, and '[p]unitive damages are recoverable for FEHA violations,' punitive damages may be included in the amount in controversy here." *Thompson*, 2017 WL 590261 at *4.

38. Courts have affirmed jury verdicts exceeding $1M in punitive damages in alleged disability discrimination cases. *E.g.*, *Juarez v. Autozone Stores, Inc.*, No. 08cv417–L (BLM), 2011 WL 1532070 (S.D. Cal., November 18, 2014) ($185 million verdict for plaintiff in pregnancy discrimination case); *see also Roby v. McKesson Corp.*, 47 Cal. 4th 686 (2009) (holding that a punitive damage award of $1.9M equal to the compensatory damage award was appropriate in disability case). Therefore, the request for punitive damages weighs in favor of establishing the amount in controversy required for removal.

39. In sum, Plaintiff's aggregated recovery on her claims, including compensatory damages such as lost wages and emotional distress damages, attorney's

fees, and punitive damages, satisfies the $75,000 jurisdictional threshold. While PS denies any liability as to Plaintiff's claims, it is "more likely than not" that the amount in controversy in this action exceeds $75,000, exclusive of interest and costs, as required by 28 U.S.C. section 1332(a).

40. Because diversity of citizenship exists between Plaintiff and PS, and the matter in controversy between the Parties exceeds $75,000, this Court has original jurisdiction of the action pursuant to 28 U.S.C. section 1332(a)(1) and removal is proper.

## V. VENUE

41. Venue lies in the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 84(c)(2), 1441, and 1446(a) because this action was originally brought in the Superior Court of the State of California, County of Los Angeles, and arose in Los Angeles, California. (Compl. ¶ 14.) Therefore, venue is proper because the Central District of California is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## VI. NOTICE OF REMOVAL TO PLAINTIFF AND THE SUPERIOR COURT

42. Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California, County of Los Angeles.

43. This Notice of Removal will be served on counsel for Plaintiff. A copy of the Proof of Service regarding the Notice of Removal will be filed shortly after these papers are filed and served.

44. In compliance with 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders filed and/or served in this action are attached as **Exhibits 1 through 2** to the Declaration of Miguel Ramirez. (Ramirez Dec. ¶¶ 2-5.)

## VII. PRAYER FOR REMOVAL

Wherefore, PS prays that this civil action be removed from the Superior Court of the State of California, County of Los Angeles to the United States District Court for the Central District of California.

| | |
|---|---|
| 1 | |
| 2  DATED: January 5, 2026 | SEYFARTH SHAW LLP |
| 3 | |
| 4 | By: _____ |
| 5 | Joshua A. Rodine |
|   | Miguel A. Ramirez |
| 6 | Mackenzie Mullin |
|   | Attorneys for Defendant |
| 7 | EXTIME PS LLC |

13

DEFENDANT EXTIME PS LLC'S NOTICE OF REMOVAL

322762780v.1